57 CCPA

The UNITED STATES, Appellant,

v.

David STUDNER et al., Appellees.

Customs Appeal No. 5373.

United States Court of Customs and Patent Appeals.

June 25, 1970.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the United States.

Siegel, Mandell & Davidson, New York City, attorneys of record, for appellees.

Before WORLEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and MATTHEWS, Senior Judge, United

States District Court for the District of Columbia, sitting by designation.

LANE, Judge.

The United States appeals from the decision and judgment of the Customs Court, 63 Cust.Ct., C.D. 3865, 300 F.Supp. 1394 (1969), sustaining the protest of the appellee-importers against classification of imported old printing blocks. One judge dissented. We affirm the judgment.

The case was submitted to the Customs Court on a stipulation of facts, to the effect that the imported merchandise consists of old and used print blocks of base metal, incapable of use for their original purpose of printing; that the blocks are not manipulated in any way prior to importation; and that they are sold and used as wall decorations. The collector classified the merchandise under paragraph 395 of the Tariff Act of 1930, 46 Stat. 590, as modified by T.D. 51802:

Print blocks   *   *   *   of whatever material composed,
used for printing, stamping, or cutting designs ........ 40% ad val.

Neither party now contends that this classification was correct. Appellees contend, and the Customs Court held, that the proper classification was under paragraph 1555 of the Act, as modified by

T.D. 52739: "Waste, not specially provided for ......'. 4% ad val." The Government contends that the classification should be under paragraph 397, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:
       *       *       *       *       *       *       *       *
Composed wholly or in chief value of   *   *   *   base metal   *   *   *
       *       *       *       *       *       *       *       *
Other   *   *   * ............................... 19% ad val.

The issue before us, as succinctly stated by the Customs Court, is

whether an old and used article no longer suitable for its original purpose and which would be considered waste if fit only for remanufacture [cases cited] must be considered something else because it can be used for another purpose without remanufacture.

Resolution of this issue depends on the meaning of "waste" in paragraph 1555 of the Tariff Act, and in particular whether "waste" as used therein includes the requirement that the items be useless without remanufacture. We shall henceforth call this the remanufacture requirement.

The Tariff Act itself does not contain a definition for waste. We therefore look to other sources to learn the congressional intent. Webster's New International Dictionary (1932 edition) states the following definition:

waste, *n*.   *   *   *   6.   That which has no original value or no value for the ordinary or main purpose of manufacture; remnants not fit for the use for which the stuff is made or intended; superfluous or rejected matter; refuse.   *   *   *

None of the other ten listed meanings is at all relevant to the issue before us. It can be seen from the quoted definition that articles fit only for remanufacture

may be properly called waste, but the definition is not limited to such articles. The first clause, for example, defines waste as "That which has no original value *or no value for the ordinary or main purpose of manufacture*". (Emphasis ours.) This particular meaning would include the merchandise in issue here, since the parties have stipulated that the print blocks are now incapable of use for printing, which is the ordinary and main purpose for which they were manufactured.

It is not necessarily true, however, that Congress was using the term "waste" in its ordinary meaning. It might have a more limited meaning in the trade, or we might infer a more limited meaning from the case law developed prior to the passage of the Tariff Act, of which Congress is presumed to have been aware. We must also look, under stare decisis principles, to judicial interpretations of the term after the passage of the Act.

As to meaning in the trade, the record before us is silent. Neither side introduced evidence, and the stipulation of the parties does not mention a trade meaning of "waste."

Looking to the case law, both before and after passage of the Act, we reach the crux of this case. The Government contends that the Customs Court's decision represents an unwarranted departure from previously decided cases. The Customs Court, however, in both the majority and dissenting opinions, considered this case to be one of first impression, and we agree. The Government, in support of its contention that pre-1930 case law placed a remanufacture requirement on the meaning of waste, cites Cadwalader v. Jessup and Moore Paper Co., 149 U. S. 350, 13 S.Ct. 875, 37 L.Ed. 764 (1893); Latimer v. United States, 223 U.S. 501, 32 S.Ct. 242, 56 L.Ed. 526 (1912); Harley Co. v. United States, 14 Ct.Cust. Appls. 112, T.D. 41644 (1926); and Mawer-Gulden-Annis, Inc. v. United States, 17 CCPA 270, T.D. 43689 (1929). *Cadwalader* did not deal with the term "waste" at all, and the court's conclusion

that items fit only for remanufacture are not "articles of india-rubber" is of no pertinence here. *Latimer* involved small pieces of tobacco leaves that had broken off from the leaves and were subsequently used to manufacture a cheaper grade of cigarettes and stogies. The court held that the pieces were not waste, because they were still tobacco, and used for the original and main purpose of making tobacco products. That opinion in no way states that in order to be waste an article must be fit only for remanufacture. In *Harley*, our predecessor court stated that waste includes things fit only for remanufacture, a point not in dispute here. While the court stated that articles which have a valuable practical use without further manufacture are not waste, this was dictum only, since the worn-out clothing there was found to have no commercial value without remanufacture. In *Mawer*, this court held that imperfect or broken olives, not salable as perfect or whole or stuffed olives, were not waste. The court reached this conclusion by noting that the merchandise at bar, while inferior to prefect or whole olives, nevertheless possessed the same food qualities and some of the uses of whole, pitted green olives. Thus it could not be said that the merchandise was not useful for the main purpose of olives, i. e., food. We are unable to perceive in *Mawer* any holding that to be waste the merchandise must be fit only for remanufacture. In sum, we have been referred to no case prior to 1930 holding that there is any such requirement.

Turning to post-1930 court interpretations of "waste," the Government contends that the case law supports its position that a remanufacture requirement is implicit in the meaning of "waste," at least as applied to "old waste." There can be little doubt that there are at least two types of waste, under the dictionary definition quoted above and under decisions such as Harley Co. v. United States, supra. New waste pertains to such things as remnants from a manufacturing process,

the remnants being unsuitable for the purposes of the process; old waste pertains to things which have lost their original utility but which may be useful for some other purpose. The Government contends that for old waste to qualify as waste under the Tariff Act, it must be fit only for remanufacture. It relies principally on *Harley*, supra, and United States v. C. J. Tower & Sons, 31 CCPA 185, C.A.D. 271 (1944). As pointed out above, the statement in *Harley* to this effect was dictum. The same is true of *Tower*, where old discarded X-ray films which were in fact useless without remanufacture were held to be waste. Against these dicta the Customs Court reasoned that since new waste was not subject to any requirement that it be fit only for remanufacture,[1] it "would be illogical to hold that 'old waste', such as this merchandise, has been taken out of the classification, waste, merely because it can be used for another purpose without remanufacture." With this reasoning we agree. The Government admits that the "cases involving 'new waste,' * * * have required a different result," but it argues that this is only because new waste, by definition, does not have the qualities or characteristics of the products intended to be manufactured. This argument in no way answers or detracts from the Customs Court's holding, nor does the argument explain why there should be a fit-only-for-remanufacture requirement for old waste when there is none for new waste. The Government is urging that old waste should be limited to things whose value is limited to material content, but we see no reason why this should be so.

The Government alternatively argues that even if the merchandise was waste, the Customs Court should have determined that the Government's claim for classification under paragraph 397 was more specific than appellees' claim under paragraph 1555. The Government contends that paragraph 397 is narrower than paragraph 1555 because many things are excluded from the former which are not excluded from the latter. We agree with the premise, but not with the conclusion. While paragraph 397 is limited to articles or wares of base metal and not plated with platinum, gold or silver, or colored with gold lacquer, paragraph 1555 is limited to waste. Even under our holding as to the meaning of waste in this case, it is clear that "waste" is more limited than "articles or wares." Paragraph 1555, therefore, is in some respects narrower and in some respects broader than paragraph 397. We are not able to conclude, as the Government contends, that paragraph 397 is the more specific. Accordingly, the Customs Court's failure to rule on this point is not reversible error.

The judgment is affirmed.

Affirmed.

WORLEY, Chief Judge (concurring).

Rarely has a record shed so little light on Congressional intent, always of paramount importance, as here. Of some comfort, however, are two helpful, albeit divided, opinions from the Customs Court. Both endeavor, largely from prior judicial decisions, to ascertain what Congress intended in this case of first impression.

The majority opinion of Chief Judge Rao, joined by Judge Ford, reflects a careful and detailed analysis of decisions of this and other courts and their possible applicability to the instant facts. Unhappily, however, none appears to be sufficiently in point to be controlling.

The dissenting opinion of Judge Newman also reflects a careful analysis of decisions relied on to support that position. Again, however, I find no decision expressly controlling of the facts here.

At first blush it does seem, as the dissent notes, that the uses and value of

---

1. See, e. g., Cia Algodonera v. United States, 23 CCPA 42, T.D. 47686 (1935); National Carloading Corp. v. United States, 22 Cust.Ct. 328, Abstract 53220 (1949).

the instant blocks would preclude their classification as "waste" in the usually accepted sense. However, the books abound with decisions reflecting some unexpected distinctions between so-called "common" sense and "tariff" sense.

On balance, it seems the decisions relied on by the majority regarding Congressional intent tip the scales in favor of the importer. I trust that conclusion has not been influenced by my high esteem, engendered over the past twenty years, for Chief Judge Rao and Judge Ford, whose combined tenure on the court total over 40 years of distinguished service. If the majority below, and we here, have erred in our efforts to determine Congressional intent, it is for that body to correct us.